294 N.W.2d 873 (1980)
206 Neb. 737
STATE ex rel. NEBRASKA STATE BAR ASSOCIATION, Relator,
v.
Bernard WALSH, Jr., Respondent.
No. 41636.
Supreme Court of Nebraska.
July 22, 1980.
*874 Edward F. Fogarty of Guilfoyle, Fogarty & Lund, Omaha, for respondent.
Paul L. Douglas, Atty. Gen., and Mel Kammerlohr, Asst. Atty. Gen., Lincoln, for relator.
Heard before KRIVOSHA, C. J., and BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.
CLINTON, Justice.
This is a disciplinary action brought in this court by the State of Nebraska, ex rel. Nebraska State Bar Association, against Bernard Walsh, Jr., respondent, an attorney and member of the association. The disciplinary proceedings were initiated as a result of complaints made to the Counsel for Discipline, an investigation by that officer, followed by a hearing before the Committee on Inquiry, 4th Judicial District, and a review by the Advisory Committee. Upon filing of the charges in this court, we appointed a referee who, pursuant to a stipulation of the relator and the respondent, heard the matter on the record made before the Committee on Inquiry. The referee found the charges to be true and recommended disbarment. Exceptions to the report of the referee were filed by the respondent and the matter was then argued in this court. We concur in the recommendation of the referee and enter an order of disbarment.
The respondent is charged with violations of the Code of Professional Responsibility, DR 1-102(A)(1), (3)-(6); DR 6-101; and DR 7-101(A)(2), (3), and of his oath as an attorney taken under Neb.Rev.Stat. § 7-104 (Reissue 1977). The contents of the pertinent disciplinary rules will later be discussed as necessary.
The specific conduct involved in the charges relates to two transactions. The first involves the respondent's representation of James Paul Hale in a workmen's compensation case before the Nebraska Workmen's Compensation Court in the years 1972 and 1973, and the rather bizarre aftermath of that matter, continuing until 1976. The second transaction involves the making and delivery by the respondent of a $3,500 insufficient funds check to June Bowman in October of 1976.
Hale is a deaf mute. Practically all of the communication between Hale and the respondent took place through Hale's wife. In 1972, Hale was an employee of the Packaging Corporation of America. His job was that of "stripper." His work involved the removal of excess material from boxes by use of a hammer and apparently required more or less continuous pounding. In September of 1972, the respondent accepted employment by Hale. On September 20, 1972, the respondent filed with the Workmen's Compensation Court a petition alleging that Hale had, in the course of and arising out of his employment, suffered an injury, referred to as a carpal tunnel syndrome. The record shows that, as a consequence, surgery described as a "release of transverse carpal ligament" was performed. The matter was heard by a judge of the Workmen's Compensation Court on November 6, 1972, and on December 6, 1972, an award was made for 7 weeks' temporary total disability and for medical, hospital, and pharmaceutical bills. The court found that the evidence was insufficient to sustain a finding of permanent disability. On or about February 8, 1973, respondent met with Mr. and Mrs. Hale and a check for the award of $434, which had been made payable to Hale and the respondent, was endorsed; *875 respondent received an attorney's fee; and Hale received the balance. At the same time, a satisfaction of the award was signed by Hale and the respondent and the latter filed the same with the court immediately thereafter. At the same conference, Mrs. Hale, on her own initiative, paid Walsh $20 in addition to the fee requested.
The basic nature of the charge in connection with the above transaction is that the respondent did not explain to Mr. and Mrs. Hale that the award of the Workmen's Compensation Court, made on December 6, 1972, would be final unless an appeal was taken within 14 days, and that he did not advise them that their exclusive remedy against the employer was in the Workmen's Compensation Court.
In the latter part of 1973 and in 1975, the respondent prepared various petitions captioned for filing in the District Court for Douglas County, all of which related to the injuries alleged to have been suffered by Hale in the course of his employment. None of these petitions were ever filed and the purpose and reason for their preparation is the subject of a conflict in the evidence.
There are some very sharp conflicts in the evidence which will be mentioned as necessary. We note, however, that the referee resolved these conflicts on essential matters in favor of the Hales. In disciplinary proceedings, the findings made by the referee are given special consideration on matters that are in irreconcilable conflict. State ex rel Nebraska State Bar Assn. v. Jensen, 171 Neb. 1, 105 N.W.2d 459 (1960).
A basic conflict in the case is whether respondent explained to the Hales the nature of the workmen's compensation proceeding, the limited rights which an employee has against the employer, and the necessity of a timely motion for rehearing or appeal if the workman is dissatisfied with the award made by one judge of the Workmen's Compensation Court. Related thereto is the question of whether the respondent ever gave timely advice that a motion for rehearing before the Workmen's Compensation Court or, alternatively (under the statute in effect at that time), an appeal to the District Court, had to be made within 14 days of the date of the award.
The referee specifically found that the respondent did not inform the Hales promptly after the award was made or advise them of their right of appeal. The respondent adduced no evidence to show that he did. He testified that he informed them of the right of appeal on February 8, 1973, at the time the satisfaction of the award was signed and the proceeds of the check in payment of the award were divided. This, of course, was long after the time for review had passed. Respondent testified that the Hales were satisfied with the award made and then knew that the award was final.
The respondent's version of the voluntary payment by Mrs. Hale of $20 was that it was a "tip" because the Hales thought he had done such a good job. Mrs. Hale testified that it was given to Walsh to hurry the litigation along. If the Hale testimony is to be believed, this tends to support the conclusion that the respondent never explained to the Hales the finality of the award and that they did not understand it. The testimony on this point is sharply conflicting. The conclusion that the respondent did not explain to them the right of appeal is corroborated by his own explanation that he felt Hale had no case worthy of appeal because the treating surgeon could find no organic basis for the complaints. Respondent seems to have been totally unaware that, even if a disability is functional, it is nonetheless compensable if it arises from an injury in the course of employment. Cardenas v. Peterson Bean Co., 180 Neb. 605, 144 N.W.2d 154 (1966). The record indicates that respondent did not get a second medical opinion on his client's condition. At the hearing before the workmen's compensation judge, the medical reports introduced indicated that the condition of Hale's arm and hand and the ultimate outcome were uncertain. These facts alone would have made prudent a further review at which time more evidence might have been available and the unfavorable progressive nature of *876 the injury might have been more clearly supportable.
The Hales' lack of understanding of the nature of workmen's compensation proceedings is further evidenced by their independent inquiry to the Workmen's Compensation Court in September of 1973, to which the court responded:
I am enclosing a copy of the award entered on December 6, 1972, by Judge Wiles of our Court. As you did not appeal this through your attorney, this case is completed.
If you have any further questions concerning this case, you should contact Mr. Walsh, as he represented you at the hearing.
 Very truly yours,
 NEBRASKA WORKMEN'S
 COMPENSATION COURT
 /s/ TKC
 Thom K. Cope
 Agency Legal Counsel
The respondent's own evidence in the form of memoranda given him by Mrs. Hale indicates that the Hales did not understand the nature of a workman's rights under the Workmen's Compensation Act, e. g., we "Want to sue for $75,000 damage." Another such memorandum which respondent introduced indicated that he knew even before the workmen's compensation case was filed that the Hales regarded the disability as serious and permanent. This apparently ultimately proved to be the case. He was also informed by the same memorandum that they were dissatisfied with the services of their surgeon.
Although the evidence was disputed as to whether respondent, during 1972 and 1973, explained the nature of the award, that it was final, and that no appeal had been taken, the referee found: "A review of the entire record and respondent's actions subsequent to February 8, 1973 (as set forth below in the findings) leads the referee to find that Mrs. Hale's testimony is to be accepted over respondent's." He specifically found: "[F]rom the date of the award (December 6, 1972) until a few days after September 24, 1973 the Hales had no such advice prior thereto." The evidence supports such finding by the requisite standard. In a proceeding for the disbarment of an attorney at law the presumption of innocence applies, and the charge made against him must be established by a clear preponderance of the evidence. State ex rel. Nebraska State Bar Assn. v. Hollstein, 202 Neb. 40, 274 N.W.2d 508 (1979).
In the latter part of 1973, the respondent prepared a petition captioned In the District Court of Douglas County, Nebraska, in which Hale was named as the plaintiff and Packaging Corporation of America was named as the defendant. This petition asserted a claim for personal injuries to the right wrist and hand, including a claim for pain and suffering, and prayed for damages in the sum of $435,000. Hale signed the petition before the respondent as notary public and the respondent affixed his signature thereto. At or about the same time, the respondent prepared another petition, likewise captioned In the District Court of Douglas County, Nebraska, in which Hale was the plaintiff and the surgeon who had attended Hale was named as the defendant. This petition alleged slander by the surgeon in that he "falsely and maliciously did speak and publish the following false and defamatory words, that is to say: `. . the condition of Mr. Hale's hand at this time is a psychological response, and is not on any organic basis.'" This petition prayed for damages in the sum of $28,000. The verification on the instrument was signed by Hale but was not notarized.
Some time prior to November 13, 1975, the respondent prepared a third petition also captioned "In the District Court of Douglas County, Nebraska." In this pleading, Mrs. Hale was the plaintiff and the Packaging Corporation of America was the defendant. The petition asked damages for loss of consortium and prayed for judgment in the sum of $265,000. This petition was never signed. None of the petitions was ever filed.
At a later time, the respondent prepared an incomplete notice to take depositions in *877 the case of James P. Hale v. Packaging Corporation of America. It gave notice of the proposed taking of the depositions of unnamed witnesses at the Douglas County Courthouse on May 17, 1976, at 2 p. m.
The respondent's explanation for the preparation of these instruments was that, although he explained to Mrs. Hale such suits were without legal basis and groundless and he could and would not file them, that he did so for the Hales' convenience so that they might prosecute the actions either through another attorney or pro se. Mrs. Hale's testimony, however, was that the respondent represented to her that the petitions had been filed and that the matters were going to be tried.
As we have previously noted, the referee resolved the factual disputes in favor of the Hales and found that the respondent's explanation was not credible, that if respondent had unequivocally informed the Hales that the suit was groundless and the respondent would not represent them, the Hales would have been unlikely to have been making the repeated calls at respondent's office. Both sides agree that the Hales were in the respondent's office at least 500 times between 1972 and 1976. The referee found:
An attorney who prepares documents, such as the petitions and the notice to take depositions, knowing that they are without legal validity which might be filed by another, such as his clients, is destructive of the integrity of the legal profession, is tantamount to acts prejudicing the administration of justice and definitely shows a lack of fitness to practice law.
The check transaction is uncomplicated. There is little conflict in the evidence because the only witnesses were Walsh and the president of the bank in which the check in question was deposited. Walsh testified that he made an agreement to purchase a boat from Don Bowman, one of his clients. At Bowman's request, Walsh made a check in the sum of $3,500, payable to June Bowman, Don's wife. The check, which does not appear in the record, was, according to the respondent, made and delivered on October 13, 1976, but dated October 15, 1976. The respondent acknowledged that at the time the check was written, he did not, and knew he did not, have sufficient funds in the account on which the check was drawn to pay it. He did not inform June Bowman of that fact although he claims that the fact that the check was post-dated should have made her aware of it. He testified that he intended to pay the check by borrowing money, giving the boat as security. His excuse was that Bowman did not deliver to him a bill of sale in time, so he was unable to arrange a loan before the check cleared. The issuance of the post-dated check did constitute a representation that the money would be in the bank on October 15th. It was not deposited until that day.
June Bowman deposited the check in a bank account in the name of their daughter, Christine, on which Don Bowman could draw. The depository bank gave immediate credit to the depositor for the check and the Bowmans then drew checks against the deposit. When the check was later returned unpaid, the depository bank did not charge the check back to the depositor's account, but held it as a cash item and made a demand on Walsh for payment. It made repeated demands upon Walsh for payment and then engaged the services of a law firm to make collection. After numerous promises, about November 1, 1976, Walsh made arrangements for the money and the depository bank appeared at Walsh's bank and received a certified or cashier's check in payment.
Although Walsh seeks to excuse his conduct in the transaction by reason of Don Bowman's alleged failure, not only did he make the check without getting the bill of sale, he also testified rather inconsistently regarding his plans for borrowing, stating that he was aware that because of possible title difficulties (inferably encumbrances), Bowman might not be able to deliver a bill of sale. At the hearing before the Committee on Inquiry, Walsh agreed to produce and place into the record within 10 days the *878 bill of sale that he had by that time purportedly received from Bowman. He did not produce the bill of sale. At the same time, he agreed with the committee to produce the bank statements for the months of October and November 1976 of the account on which the check was drawn. He furnished for the record after the hearing bank statements for October and November 1973. These showed a maximum balance of $715.11 for the month of October 1973. Walsh had testified that in 1976 when the check was written, he had a balance of $2,600 or $2,700 in the account. The failure of Walsh to produce the pertinent records contrary to his promise weighs against him. Whether he had an actual intent to defraud is not decisive because, according to his own testimony, he knew that he did not have sufficient funds to pay the check. He claimed to be aware that Bowman might not be able to produce a bill of sale. He might have stopped payment on the check but he did not. He was quite willing, apparently, to let someone  in this case the depository bank  run the risk of loss.
The record establishes that the respondent has once previously, upon complaint and investigation by the Committee on Inquiry, been reprimanded for neglecting the affairs of a client.
Canon 1 of the Code of Professional Responsibility pertains to maintaining the integrity and competence of the legal profession. Certain disciplinary rules promulgated thereunder, namely DR 1-102(A)(4), (5), and (6), prohibit, among other things: engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; engaging in conduct prejudicial to the administration of justice; and any other conduct adversely reflecting on the fitness of the lawyer to practice law. Canon 6 pertains to competent representation. DR 6-101(A)(2) and (3) mandate that a lawyer shall not handle a legal matter without preparation adequate to the circumstances and shall not neglect a legal matter entrusted to him. Canon 7 pertains to zealous representation of the client within the bounds of the law. DR 7-101(A)(3) provides that a lawyer shall not intentionally damage his client during the course of the professional relationship. Interpretative ethical consideration EC 7-8 under the latter canon provides that the lawyer should exert his best efforts to insure that the decisions of his client are made only after the client has been informed of the relevant considerations. Ethical consideration EC 7-11 provides that the responsibilities of a lawyer may vary according to the intelligence, experience, mental condition, or age of the client.
It is clear from the record that Mr. and Mrs. Hale had very unrealistic expectations. It is also clear that they were difficult clients, partly because of the difficulty in communication and partly because of their lack of understanding. At the heart of this matter is Walsh's failure to make a timely explanation to them of the nature of a workmen's compensation claim, the limits of recovery allowed thereunder, and the right to and the necessity of a timely appeal. The record supports, by a clear preponderance of the evidence, a conclusion that Walsh failed grossly in this matter. With reference to the events which transpired after the judgment became final, that is, the preparation of the groundless pleadings, nothing can be said to excuse such conduct.
We have said a license to practice law in this jurisdiction is granted on the implied understanding that the party receiving it shall at all times demean himself in a proper manner and abstain from such practices as cannot fail to bring discredit to himself, the profession, and the courts. Violation of any of the ethical standards relating to the practice of law or any conduct of an attorney in his professional capacity which tends to bring reproach on the courts or the legal profession constitute grounds for suspension or disbarment. State ex rel Nebraska State Bar Assn. v. Ledwith, 197 Neb. 572, 250 N.W.2d 230 (1977). Any conduct on the part of an attorney evidencing his unfitness for the confidence and trust which attend the relationship of attorney and client or which is unworthy of public confidence constitutes a ground for suspension *879 or disbarment. State ex rel. Nebraska State Bar Assn. v. Jensen, supra. Respondent's conduct in connection with the workmen's compensation matter clearly constituted deceit and misrepresentation, conduct prejudicial to the administration of justice, the handling of a matter without sufficient preparation, conduct which reflected upon his fitness to practice law, and failure to represent a client.
The knowing issuance of the insufficient fund check at the very least involved a deception and a false representation, namely, that the money would be in the account on October 15, the day the check was dated. The evidence clearly supports the conclusion that respondent knew he could not have the loan arranged at that time. An attorney may be subject to disciplinary action for conduct outside the practice of law or the representation of clients, and for which no criminal prosecution has been instituted or conviction had, if such conduct might have been found to be illegal. State ex rel. Nebraska State Bar Assn. v. Ledwith, supra. Cumulative acts of misconduct are more cause for concern than an isolated instance of negligence or misconduct, and justify more severe sanctions. State ex rel. Nebraska State Bar Assn. v. Hollstein, supra.
JUDGMENT OF DISBARMENT.